UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Marc A. Sterr,** an individual, ) | **CASE NO. S CIV 08-2307 DOC** |
| ) | |
| **Plaintiff(s),** ) | |
| ) | **O R D E R** |
| v. ) | |
| ) | |
| **D. Baptista, et al.,** in their individual and ) official capacities, ) | |
| ) | |
| **Defendant(s).** ) | |

Before the Court is *pro se* Plaintiff Marc A. Sterr's ("Plaintiff") Motion for an Injunction and Temporary Restraining Order (the "Motion"). The Court finds the matter appropriate for decision without oral argument. FED. R. CIV. P. 78; Local R. 7-15. After considering the moving papers, and for the reasons set forth below, the Court hereby DENIES Plaintiff's Motion.

**I.   BACKGROUND**

At all times relevant, Plaintiff has been a prisoner of the State of California in the custody of the California Department of Corrections and Rehabilitation, confined at Mule Creek State

Prison. Plaintiff alleges that Defendants D. Baptista; S. Barham; Iman Mohamed; D. Long, R.Rubia; and M. Martel (collectively, "Defendants") have denied his right to practice his religious faith of Asatru/Odinism in accordance with its traditions and tenets.

On April 24, 2009, Plaintiff filed a "Proposed Order to Cause [sic] for an Injunction and Temporary Restraining Order," which appeared to be a Motion for an Injunction and Temporary Restraining Order ("Initial Motion"). The Initial Motion presented no facts or legal analysis to support a meritorious case and the Court accordingly denied the Initial Motion on July 2, 2009. That same day, Plaintiff filed the instant Motion.

In pursuing the instant Motion, the Plaintiff again has a burden of showing that there is a strong likelihood of success on the merits. Plaintiff claims that Defendants placed substantial burdens on his right to exercise his religious beliefs in violation of the Free Exercise Clause of the First Amendment ("Free Exercise Clause") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Court finds that Plaintiff has not demonstrated a meritorious case and, thus, he is not entitled to preliminary relief.

## II.   LEGAL STANDARD

### A.   Temporary Restraining Order

Generally, courts grant equitable relief in the event of irreparable injury and the inadequacy of legal remedies. *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994); *see also Weinberer v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). Plaintiffs must satisfy additional requirements in order to be granted preliminary relief. Plaintiffs have the burden of showing that they are entitled to preliminary relief. The "traditional test" requires that Plaintiffs demonstrate (1) a strong likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) greater hardship to Plaintiffs than Defendants; and (4) that the public interest favors granting the injunction. *See American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983).

The "alternative test" permits the plaintiff to meet its burden by showing either "(1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of

serious questions going to the merits and the balance of hardships tipping in [the plaintiff's] favor." *Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004) (internal quotation marks omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *U.S. v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992) (citations omitted). "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Vill. of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988) (citations omitted).

**B.     Free Exercise Clause of the First Amendment**

The Free Exercise Clause, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." U.S. Const. amend. I. Under the Free Exercise Clause, a law that burdens religious practice need not be justified by a compelling governmental interest if it is neutral and of general applicability. *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595. "However, where such a law is not neutral or not of general application, it must undergo the most rigorous of scrutiny: [i]t must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. Neutrality and general applicability are interrelated, and failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 521, 113 S. Ct. 2217 (1993).

To determine whether a particular law burdens religion, the court must begin with the text of the law, for the minimum requirement of neutrality is that law not discriminate on its face. *Id*. at 534. However, facial neutrality is not determinative of whether a given law violates the Free Exercise Clause, as that clause extends beyond facial discrimination and forbids subtle departures from neutrality and covert suppression of particular religions beliefs. *Id*. Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality, as the "Free Exercise Clause protects against governmental hostility which is masked as well as overt." *Id*.

1          Under the Free Exercise Clause, "[t]he right to exercise religious practices and beliefs
2   does not terminate at the prison door.  The free exercise right, however, is necessarily limited by
3   the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or
4   to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam)
5   (citations omitted).  In order to implicate the Free Exercise Clause, the prisoner's belief must be
6   most sincerely held and rooted in religious belief.  *See Shakur v. Schriro*, 514 F.3d 878, 884-85
7   (9th Cir. 2008).

8          In analyzing the legitimacy of regulation of prisoners' religious expression, the court
9   should utilize the *Turner* factors.  *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987); *see also*
10  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400 (1987); *Shakur*, 514 F.3d at
11  884-85 (analyzing Muslim inmate's challenge to the denial of his request for kosher meat, which
12  he believed would be consistent with Islamic Halal requirements); *Henderson v. Terhune*, 379
13  F.3d 709, 713 (9th Cir. 2004); *Mayweathers v. Newland*, 258 F.3d 930, 937-38 (9th Cir. 2001)
14  (analyzing Muslim inmates' challenge to prison work rule and limiting *O'Lone* to its facts);
15  *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*,
16  514 F.3d 884-85; *Anderson v. Angelone*, 123 F.3d 1197, 1198 (9th Cir. 1997); *Ward v. Walsh*, 1
17  F.3d 873, 876-77 (9th Cir. 1993); *Friend v. Koladzieczak*, 923 F.2d 126, 127 (9th Cir. 1991).

18         The *Turner* factors determines "whether a prison regulation that impinges on inmates'
19  constitutional rights is 'reasonably related' to legitimate penological interests.  In determining
20  reasonableness, the relevant factors include (a) whether there is a 'valid, rational connection'
21  between the regulation and a legitimate and neutral governmental interest put forward to justify
22  it, which connection cannot be so remote as to render the regulation arbitrary or irrational; (b)
23  whether there are alternative means of exercising the asserted constitutional right that remain
24  open to inmates, which alternatives, if they exist, will require a measure of judicial deference to
25  the corrections officials' expertise; (c) whether and the extent to which accommodation of the
26  asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of
27  limited prison resources, which impact, if substantial, will require particular deference to
28  corrections officials; and (d) whether the regulation represents an 'exaggerated response' to

prison concerns, the existence of a ready alternative that fully accommodates the prisoner's rights at de minimis costs to valid penological interests being evidence of unreasonableness." Id. at 78-79.

### C.    Religious Land Use and Institutionalized Persons Act

The Religious Freedom Restoration Act ("RFRA"), which imposes a more stringent standard on government regulations that burden religious expression, has been declared unconstitutional as applied to local and state laws, because it exceeded Congress' powers. *See Freeman*, 125 F.3d at 735-36. Congress resurrected the RFRA's standards as applied to state prisons using its power under the Spending and Commerce Clauses. Section 3 of RLUIPA provides that "[no] [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

As opposed to traditional First Amendment jurisprudence, where prisoners' free exercise claims are analyzed under the deferential rational basis standard of *Turner*, "RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that governmental interest." *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (citations and internal quotations omitted).

### III.   DISCUSSION

Plaintiff requests a temporary restraining order to restrain Defendants from: (1) enforcing new regulations that alter the times when earth-based religions can utilize their religious grounds; (2) enforcing new regulations that replace the plants on the religious grounds with grass; and (3) issuing any directive or memorandum that curtails the religious rights of Plaintiff. In addition, Plaintiff requests that he be allowed to the religious grounds as he could prior to the new regulations.

///

///

**A.     Free Exercise Clause of the First Amendment**

    **1.          Likelihood of Success on the Merits**

As to the merits of his case, Plaintiff argues that his case has a great likelihood of success because the Defendants have retaliated against Plaintiff and have intentionally denied Plaintiff of the right to exercise his religious beliefs. "A prisoner suing prison officials under [Section] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-26 (9th Cir. 1994) (per curiam). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Also, a prisoner must demonstrate that her or his First Amendment rights were actually chilled by the alleged retaliatory action. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

The Court finds that Plaintiff has not established the link between the exercise of constitutional rights and the alleged retaliatory action. As to "grass only" regulations, Defendants' actions do not amount to a denial of Plaintiff's ability to exercise his religious beliefs because: (1) the new regulation limiting religious grounds to "grass only" applies to all earth-based religions, including Native American sacred grounds; (2) the Defendants contend that this change in vegetation will ensure procedural compliance and avoid discord while searching the grounds; (3) religious plants, instead of being discarded, will be transplanted and relocated to Vocational Landscaping. As to "grounds schedule" regulations, Defendants' actions do not amount to an unconstitutional denial of Plaintiff's ability to exercise his religious beliefs because: (1) although classrooms and sanctuaries can no longer be utilized on a regular basis, consideration will be given to accommodating special events and (2) in response to the reduction of classroom and sanctuary use, the grounds schedule for Native American, Asatru/Odinist, and Wiccan/Pagan Religions was expanded. Accordingly, Plaintiff has not satisfied his burden of showing a strong likelihood of success on the merits and is not entitled to preliminary relief.

1        **2.        Threat of Irreparable Harm**

2        Even if Plaintiff had met his burden under the first prong of *American Motorcyclist*, he
3   would fail under the second prong. Plaintiff argues that he has been threatened with irreparable
4   harm because he has been denied his right to practice his religion. However, under the second
5   *Turner* factor – availability of alternatives – "[t]he relevant inquiry... is not whether the inmate
6   has an alternative means of engaging in the particular religious practice that he or she claims is
7   being affected; rather [the court must] determine whether the inmates have been denied all
8   means of religious expression." *Ward*, 1 F.3d at 877; *cf. Allen*, 827 F.2d at 568 (stating that
9   prisoner must establish denial of access to a religious ceremony to support a free exercise claim).
10  "Also relevant to the evaluation of the second factor is a distinction *O'Lone* had no occasion to
11  make: the distinction between a religious practice which is a positive expression of belief and a
12  religious commandment which the believer may not violate at the peril of his [or her] soul."
13  *Ward*, 1. F.3d at 878 (concluding that where prison officials have deprived Orthodox Jewish
14  prisoners of kosher diet, a rabbi, and religious services, the second factor weighs in the
15  prisoner's favor) *with id.* at 880 (concluding that prisoner's request not to be transported on the
16  Sabbath was not reasonable under the second factor because prisoner had many opportunities to
17  observe the Sabbath).

18       The new regulations for earth-based religions do not deny Plaintiff all means of religious
19  expression. Since Plaintiff may still retain his plants and observe religious holidays, there is no
20  threat of irreparable harm.

21       **3.        Balance of Hardships**

22       Under the alternate test, Plaintiff may satisfy his burden by showing that the balance of
23  hardships tip in his favor. Plaintiff argues that his suffering associated with the recent changes
24  in earth-based religion regulations greatly outweighs any hardship to Defendants. Furthermore,
25  Plaintiff contends that there is no compelling governmental interest for the new regulations.

26       With respect to the connection between the regulation of religious exercise and the
27  legitimate penological interest, evidence concerning anticipated problems, even though no actual

28

problems have arisen from the prisoner's conduct, is sufficient to meet this standard. *See Friedman*, 912 F.2d at 332-33. In light of the evidence submitted in support of a legitimate penological interest in security, the Ninth Circuit has upheld policies prohibiting long hair, *see Henderson*, 379 F.3d at 713-14; growing beards, *see Friedman v. Arizona*, 912 F.2d 328, 331-32 (9th Cir. 1990); preaching of racial hatred and violence, *see Mccabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987); wearing headbands, *see Standing Deer v. Carlson*, 831 F.2d 1525, 1528-29 (9th Cir. 1987); attendance of sweat-lodge ceremonies by Native American prisoners in disciplinary segregation, *see Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987); and inmate led religious services, *see Anderson*, 123 F.3d at 1198-99.

Furthermore, in light of the evidence of generalized safety concerns, the Ninth Circuit upheld a prohibition on prisoners keeping candles in their cells. *See Ward*, 1 F.3d at 879. The Ninth Circuit also concluded that the interest in a simplified food service may allow a prison to provide a pork-free diet, instead of a fully kosher diet, to an Orthodox Jewish inmate. *See id.* at 877-79; *see also Resnick v. Adams*, 348 F.3d 763, 769 (9th Cir. 2003) (concluding that the interest in "the orderly administration of a program that allows federal prisons to accommodate the religious dietary needs of thousands of prisoners" allows a prison to require submission of a standard prison form in order to receive kosher food). Prison officials have also been found to have a legitimate interest in getting inmates to their work and educational assignments. *See Mayweathers*, 258 F.3d at 938.

In the instant case, policies regulating religious grounds vegetation and schedules may ensure procedural compliance and avoid discord while searching the grounds. Thus, prisons officials have a legitimate interest in enforcing these policies.

**B.     Religious Land Use and Institutionalized Persons Act**

For the aforementioned reasons, the Court finds that the RLUIPA is not implicated as Defendants have not imposed a substantial burden on Plaintiff's religious practices. The regulations at issue further a governmental interest by the least restrictive means.

///

IV. CONCLUSION

For the reasons set forth, Plaintiff's Motion for an Injunction and Temporary Restraining Order is hereby DENIED.


IT IS SO ORDERED.

DATED: July 17, 2009

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE
Sitting by Designation